UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| TUSHAR S. PARIKH, | Case No. 11-47619 |
| Debtor. | Honorable Donald R. Cassling |
| AMERICAN CHARTERED BANK, | |
| Plaintiff, | Adv. No. _____ |
| v. | |
| TUSHAR S. PARIKH, | |
| Defendant. | |

## COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT
## UNDER 11 U.S.C. § 523(a)(2)(B)

Adversary Plaintiff American Chartered Bank ("ACB"), by and through its attorneys, Meltzer, Purtill & Stelle LLC, hereby requests that this Court determine that ACB's claims against Defendant Tushar S. Parikh ("Debtor") are non-dischargeable pursuant to section 523(a)(2)(A) and (B) of the Bankruptcy Code, and in support thereof states as follows:

### JURISDICTION

1.     The Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code on November 23, 2011.

2.     The court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. § 1334 and 28 U.S.C. § 157.

3.     The Court has jurisdiction over this adversary complaint pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J).

{05665: 485: 00912961.DOC :4 }

4. The statutory basis for the relief requested herein is 11 U.S.C. §§ 523(a)(2)(A) and (B).

5. On April 6, 2012, the Court entered an order [Dkt. No. 27] extending the deadline until May 18, 2012 for ACB to file a complaint objecting to Debtor's discharge of its debt.

## PARTIES

6. ACB is a bank organized under the laws of the State of Illinois, with its principal place of business in Schaumburg, Cook County, Illinois.

7. ACB is listed in Debtor's Chapter 7 bankruptcy schedules as both a secured creditor and as having a judgment against the debtor in the amount of $1,008,212.52.

8. Tushar S. Parikh ("Debtor") is the debtor in this Chapter 7 proceeding.

9. Tushar International, Ltd, also known as T.S.T. International ("TST"), is an Illinois corporation with its principal place of business in Chicago, Illinois.

10. Debtor is the sole shareholder, President, and operator of TST.

## FACTUAL BACKGROUND

### State Court Action

11. On June 16, 2011, ACB filed suit in the Eighteenth Judicial Circuit, DuPage County Illinois, against Debtor, TST, and Debtor's wife, Ketki Parikh ("Ketki"), for breach of note and breach of guaranty claims, Case No. 2011-L-000692 (the "State Court Action"). A true and correct copy of the complaint filed in the State Court Action is attached hereto as **Exhibit 1**.

12. On or about December 1, 2003, Tushar International, Ltd. ("TST") executed a Promissory Note ("Note I") in favor of ACB in the principal amount of $400,000.00. Note I was later amended several times (collectively, the "Note I Modifications"), which included Change In Terms Agreements executed on February 27, 2010 (the "February 2010 CIT"), June 27, 1010 (the "June 2010 CIT"), July 2, 2010 (the "July 2010 CIT"), September 27, 2010 (the "September

2010 CIT"), and November 27, 2010 (the "November 2010 CIT"), and increased to a principal amount of $680,000.00 ("Loan I").

13.     As security for Note I, on December 1, 2003 Debtor and Ketki each executed Commercial Guarantees in favor of ACB.

14.     On or about December 2, 2003, Debtor and Ketki executed a Promissory Note ("Note II") in favor of ACB in the principal amount of $220,000.0. Note II was later amended several times ("Note II Modifications" and, together with Note I, the Note I Modifications, Note II, and the Guarantees, the "Loan Documents"), which included a Change in Terms agreement executed on March 12, 2010 (the "March 2010 CIT" and together with the February 2010 CIT, the June 2010 CIT, the July 2010 CIT, the September 2010 CIT, and the November 2010 CIT, the "CITs"), and increased to a principal amount of $323,000.00 ("Loan II" and, together with Loan I, the "Loans"). TST was also added to the note as a borrower by the Note II Modifications.

15.     On June 2, 2011, ACB declared Debtor, TST, and Ketki in default under the various loan documents for their failure to make the required monthly payments due thereunder.

16.     On July 28, 2011, judgment was entered against Debtor, TST, and Ketki, in the State Court Action, in the amount of $1,008,212.52. A true and correct copy of the judgment entered in the State Court Action is attached hereto as **Exhibit 2**.

**Debtor's Fraudulent Conduct / Misrepresentations**

17.     Beginning in or around June of 2009, Debtor and TST stopped fully cooperating with the financial reporting requirements for the extension of the Loans.

18.     In connection with the June 2009 Note I Modification, Debtor and TST delayed, and ultimately refused to allow, a field audit of TST.

{05665: 485: 00912961.DOC :4 }                           3

19. In response to Debtor and TST's failure to fully cooperate with ACB, ACB began aggressively amortizing the Loans under the CITs.

20. As an inducement to ACB to extend the maturity date of the Loans to Debtor and TST under the Loan Documents and CITs, Debtor was required to submit, and did submit, certain financial information to ACB in order to show that Debtor and TST possessed the ability to repay the amounts loaned under the Loan Documents

21. On or about February 24, 2010, Debtor provided a personal financial statement (the "PFS") in support of the extension of the Loans. A true and correct copy of the PFS is attached hereto as **Exhibit 3**.

22. In or around September, 2010, Debtor and TST provided financial statements with regard to TST's finances (the "TST Financials" and, together with the PFS, the "Financial Statements"). True and correct copies of the TST Financials are attached hereto as **Exhibit 4**.

23. According to the PFS, Debtor's total earnings for 2009 were $245,290.00, comprised of Salary, Interest and Dividends, and Sub Chapter S Corporation Income. The Sub Chapter S Corporation Income is shown as additional income from the Debtor's "salary" received from TST.

24. According to Debtor's Amended Statement of Financial Affairs filed herein, Debtor's total earnings for 2009 were actually only $90,000.00 – over $155,000.00 less than what he led ACB to believe through the income figures set forth on his PFS. \

25. Debtor's actual income for 2009 was less than half (50%) of the amount set forth on the PFS.

26. According to the PFS, a substantial portion of Debtor's net worth was comprised of the non-readily marketable securities of TST, which, according to the PFS, were valued at $1,257,645.00 as of December 31, 2009.

27. However, pursuant to Debtor's Amended Schedule B [Dkt. No. 15], the value of his securities in TST was $0.00 as of the Petition Date.

28. In addition, according to the TST Financials, TST had $2,397,413 of inventory and $1,473,585.00 worth of receivables as of the end of September 2010.

29. In response to various third-party citations issued in the State Court Action (the "Citations"), ACB has learned that at least Five Hundred and Thirty-Seven Thousand Dollars ($537,000.00) worth of jewels, allegedly represented by Debtor to be assets of TST, were actually owned by third parties and were sent to TST, on memorandum, so that TST could inspect the jewels before making an offer to purchase them.

30. In response to the Citations, ACB has obtained documentation showing that at least two suppliers of TST had sent jewels to TST on memorandum, Essex Global Trading, Inc. ("Essex"), and Star Rays NY, Inc. ("Star Rays"), both New York corporations.

31. Essex, as set forth in the Affidavit of Aleks Paul, attached hereto as **Exhibit 5**, sent a diamond, sapphire, and platinum jewelry set, valued at $525,000.00 to TST on memorandum. Essex retained title to the jewelry, the jewelry was to be returned upon Essex's demand, and TST had no right transfer or otherwise dispose of the jewelry without the consent of Essex.

32. As of May 11, 2012, despite having made a demand therefore, TST has failed to reimburse Essex for the value of the Jewelry.

33. Star Rays also sent jewels to TST, on memorandum, which were never returned or paid for. Star Rays' jewels, according to the documents submitted in response to the Citations, were valued at $12,279.60. True and correct copies of the documents submitted by Star Rays in response to the Citations are attached hereto as **Exhibit 6**.

34. Upon information and belief, the Financial Statements tendered by Debtor to ACB in support of his efforts to obtain monies from ACB falsely listed assets valued at not less than $537,000.00 in which he did not possess an ownership interest.

35. Upon information belief, Debtor falsely listed additional assets (other than those set forth herein) of material value in which he did not possess an ownership interest on the Financial Statements in order to exaggerate the value of the inventory set forth therein and induce ACB to extend the Loans.

### COUNT ONE - OBJECTION TO DISCHARGEABILITY OF DEBT BASED ON FALSE REPRESENTATION - 11 U.S.C. § 523(a)(2)(A) and (B)

36. 11 U.S.C. § 523(a)(2)(B) provides that a discharge under section 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by use of a statement in writing that is: (i) materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; (iv) and that the debtor caused to be made or published with intent to deceive..

37. When Debtor submitted the Financial Statements to ACB he represented that the information included on the Financial Statements were accurate. However,

38. At the time Debtor submitted the Financial Statement to ACB, Debtor knew that the material statements he made concerning the assets and liabilities of TST, and his own personal net worth, were materially false.

39. At no time prior to entering into any of the CITs did ACB know of the material falsities set forth on the Financial Statement.

40. Debtor intended to deceive ACB in order to secure extensions of the Loans through the CITs when he falsely represented the information on the Financial Statements and provided those false Financial Statements to ACB.

41.   ACB reasonably and justifiably relied on the Financial Statements.

42.   In reliance on the Financial Statements, ACB agreed to extend the Loans and enter into the CITs.

43.   Debtor obtained access to the above-mentioned funds by false pretenses, false representations and/or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

44.   Due to Debtor's fraudulent actions as set forth above, the Debtor should be denied a discharge of its debt owed to ACB in the amount of not less than $1,008,212.52 pursuant to 11 U.S.C. § 523(a)(2)(A) and (B).

WHEREFORE, Plaintiff American Chartered Bank prays that this Court enter an order declaring that the debt by Debtor to American Chartered Bank in the amount of $1,008,212.52 is non-dischargeable, and granting any other relief the Court deems equitable and just under the circumstances.

Respectfully Submitted,

**AMERICAN CHARTERED BANK**

By:   /s/ *Jason L. Pyrz*
      One of Its Attorneys

David L. Kane (ARDC No. 6277758)
Jason L. Pyrz (ARDC No. 6291903)
MELTZER, PURTILL & STELLE LLC
1515 E. Woodfield Road, Second Floor
Schaumburg, Illinois 60173
(847) 330-2400